UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIKE HOWISEY, as attorney in fact for WALLACE E. HOWISEY, an incapacitated person,<br><br>Plaintiff,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, a foreign corporation organized under the laws of the State of Iowa,<br><br>Defendant. | Case No. C17-00009 RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter comes before the Court on Defendant Transamerica Life Insurance Company ("Transamerica")'s Motion for Summary Judgment. Dkt. #40. Plaintiff Mike Howisey, as attorney in fact for his father Wallace E. Howisey, opposes this Motion, Dkt. #54, and has filed a parallel Motion for Partial Summary Judgment, Dkt. #47. The Court has determined that oral argument is unnecessary. For the reasons below, the Court GRANTS Defendant's Motion, DENIES Plaintiff's Motion, and STRIKES all other Motions as moot.

//

//

ORDER GRANTING DEFENDANT'S MOTION SUMMARY JUDGMENT - 1

## II. BACKGROUND

In 1995, Wallace E. Howisey purchased a long term care insurance policy (the "Policy") from Bankers United Life Assurance Company ("Bankers United"), a predecessor of Transamerica. *See* Dkt. #41-1. The Policy provides certain base benefits, as well as additional benefits described in riders and endorsements that Plaintiff selected. *See id*. The base benefits include coverage for, *inter alia*, stays at a nursing home. Dkt. #41-1 at 5. Mr. Howisey also purchased the Home Health and Community Care Rider ("HHCC Rider"), which includes "Assisted Living Facility" benefits and other benefits. *See id.* at 20–25.

An explanation of the "Nursing Home Benefit" is contained in the main text of the Policy. Dkt. #41-1 at 10. It states that, "[a]fter satisfaction of the Nursing Home Elimination Period [of 60 days], We will pay the actual charges for confinement in a Nursing Home, up to the Maximum Daily Nursing Home Benefit shown in the Schedule for each day of a Nursing Home stay." *Id*. The term "Nursing Home" is capitalized. According to the Policy, in order to qualify for the Nursing Home Benefit, three conditions must be satisfied:

> (1) Your Physician must certify that Your treatment is Medically Appropriate; and
> (2) the care or services must be provided in a Nursing Home; and
> (3) the charges must be incurred while this Policy is in force.

*Id*. Again, the term "Nursing Home" is capitalized, leading the reasonable assumption that it is a defined term. Indeed, a "Nursing Home" is expressly defined in the Policy as:

> A facility, or that part of a facility which:
> (1) is licensed by the state as a nursing home; and
> (2) is engaged in providing, in addition to room and board accommodations, nursing care and related services on a continuing inpatient basis; and
> (3) provides, on a formal prearranged basis, a Nurse who is on duty or on call at all times; and

> (4) has a planned program of policies and procedures developed with the advice of, and periodically reviewed by, at least one Physician; and
> (5) maintains a clinical record of each patient.
> A Nursing Home may be a distinct part of a hospital or other institution. It is not a retirement home or community living center, nor is it a place that is primarily used for rest; for the care and treatment of mental diseases or disorders, drug addiction, or alcoholism; for day care or for educational care.

Dkt. #41-1 at 8.

Subject to its terms and conditions, the Policy's HHCC Rider provides benefits equal to "the actual charges for confinement in an Assisted Living Facility, up to the Maximum Daily Assisted Living Facility Benefit," as shown in the Policy Schedule. Dkt. #41-1 at 22–23. Among the conditions for Assisted Living Facility Benefits is the requirement that "the care or services must be provided while confined in an Assisted Living Facility." *Id.* at 23. Again, Assisted Living Facility is capitalized. An Assisted Living Facility is expressly defined as:

> A facility, or that part of a facility which:
> (1) is licensed by the appropriate licensing agency (if any) as an Assisted Living Facility; and
> (2) provides 24 hour-a-day care with services sufficient to support inpatients' needs due to Cognitive Impairment or the inability to perform Activities of Daily Living; and
> (3) provides 3 full meals daily and accommodates inpatients' special dietary needs; and
> (4) has an awake employee on duty at all times who is trained in the appropriate methods and procedures for handling and administering drugs and biologicals; and
> (5) has formal arrangements for the services of a Physician or Nurse to furnish medical care in case of emergency; and
> (6) has a minimum of 10 inpatients.

*Id.* at 20.

In April of 2014, Transamerica received a Notice of Claim Form package from Mike Howisey. Dkt. #41-4. The Notice of Claim identified "Aegis" as a place where Wallace Howisey would receive care in the future. *Id.* at 4. The Notice stated: "We are currently using

ORDER GRANTING DEFENDANT'S MOTION SUMMARY JUDGMENT - 3

family to help him as long as possible so he can stay in his home. I anticipate based on family history that he will be in assisted living late Summer 2014." *Id*. On April 29, 2014, Transamerica sent Mike Howisey a letter preapproving Wallace Howisey for eligibility "under the Assisted Living Benefit." Dkt. #41-5.

On or about October 10, 2014, Wallace Howisey became a resident at Aegis Assisted Living. Dkt. #41 at 8. On behalf of his father, Mike Howisey executed a Residence and Care Agreement with Aegis. Dkt. #41-13. On October 13, 2014, Mike Howisey telephoned Transamerica to start a claim for Assisted Living Facility Benefits. Dkt. #41 at 8. By letter dated November 10, 2014, Transamerica approved Plaintiff's claim under the Policy's "Assisted Living Benefit" and began paying claims. Dkts. #41-7; #41-8. Explanation of Benefits letters sent to Plaintiff over the next two years indicated that the "type of service" being received was "Assisted Living Facility – HHC." Dkt. #41-8. Transamerica continued to pay Assisted Living Facility Benefits to Plaintiff until March of 2016, at which time the Maximum Assisted Living Facility Benefits under the Policy of $35,000 were exhausted. Dkts. #41-9; #41-10.

On April 7, 2016, Mike Howisey telephoned Transamerica stating that Plaintiff was entitled to Nursing Home Benefits for his stay at Aegis. Transamerica began an investigation to determine whether Nursing Home Benefits were payable under the Policy.

On April 13, 2016, Transamerica ordered a facility evaluation of Aegis from its contracted vendor, National Elder Care Referral Systems, Inc., d/b/a "CareScout." Dkt. #41 at 10. CareScout filled out a "Facility Questionnaire" based on a telephone interview with Jae Baritz, the Assistant General Manager of Aegis, and obtained a copy of Aegis's license from the State of Washington and Plaintiff's Residence and Care Agreement with Aegis. *See* Dkts.

ORDER GRANTING DEFENDANT'S MOTION SUMMARY JUDGMENT - 4

#41-11; #41-12; and #41-13. The interview and documents indicated to Transamerica that Aegis was an Assisted Living Facility, that Aegis was licensed as an Assisted Living Facility, and that Aegis was not licensed to operate as a nursing home.

On May 19, 2016, Transamerica sent a letter to Mr. Howisey denying the request for Nursing Home Benefits and explaining its decision. Dkt. #41-15. This letter indicated that Wallace Howisey could be entitled to Nursing Home Benefits if he moved into a licensed nursing home in the future. *Id*. The letter also stated that Transamerica was "willing to continue to provide the same benefit amount pursuant to an Alternate Care Benefit agreement in lieu of the Nursing Home Benefit. . . . subject to the Policy Maximum of… $150,000…" *Id*. The letter enclosed the proposed "Alternative Plan of Care Agreement" with a cover letter requesting that Plaintiff "[r]eview the Agreement carefully and, if you are in agreement with the elements contained therein, please sign, date and return the original Agreement." *Id*. By letter dated June 13, 2016, Mike Howisey rejected the Alternative Plan of Care Agreement without explanation. Dkt. #41-18.

On July 28, 2016, Mr. Howisey filed a complaint with the State of Washington Office of Insurance Commissioner ("OIC"). Dkt. #41-20. Mr. Howisey filed this lawsuit on October 14, 2016, in King County Superior Court. Dkt. #1-1. On January 4, 2017, Transamerica removed to this Court. Dkt. # 1. On May 8, 2017, Mr. Howisey filed a First Amended Complaint. Dkt. #23. The Complaint includes causes of action for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Insurance Fair Conduct Act ("IFCA"), violation of Washington State's Consumer Protection Act ("CPA"), insurance bad faith, negligent retention and supervision, and intentional misrepresentation. *Id*.

# III. DISCUSSION

## A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

Under Washington law, interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). Determining whether coverage exists is a two-step process. The insured must first show the loss falls within the

scope of the policy's insured losses. *McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 731 837 P.2d 1000, 1003-1004 (1992). To avoid coverage, the insurer must then show the loss is excluded by specific policy language. *Id*. When interpreting an insurance policy, "ambiguities are resolved in favor of the policyholder." *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251, 252 (1987) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). In addition, "exclusionary clauses are to be construed strictly against the insurer." *Id.* (citing *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985)). "The terms of a policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Overton*, 145 Wn.2d at 424. Furthermore, a policy must be considered "as a whole," including riders or endorsements. *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1177 (Wash. 1998). Defined terms "should be interpreted in accordance with [the] policy definition." *Id*.

**B. Transamerica and Mr. Howisey's Motions for Summary Judgment**

Transamerica's position is that all of Mr. Howisey's claims must be dismissed on summary judgment because its refusal to pay "Nursing Home Benefits" under the Policy was consistent with the Policy and state law. *See* Dkt. #40 at 16. From Transamerica's perspective, the policy unambiguously requires that such benefits be paid only when care is provided in a nursing home, defined explicitly as a facility "licensed by the state as a nursing home." *Id*. at 18. Transamerica points out that "it is undisputed that Aegis is not a facility licensed by the state as a nursing home; rather, it is licensed only as an assisted living facility." *Id.* Transamerica also argues that, because it properly investigated Mr. Howisey's claim for Nursing Home Benefits and had a reasonable basis for denying the request, all of Mr.

Howisey's common law and statutory bad faith claims fail. Dkt. #40 at 23 (citing *Lakehurst Condo. Owners Ass'n v. State Farm Fire & Cas. Co.*, 486 F. Supp. 2d 1205, 1217 (W.D. Wash. 2007)). Transamerica notes that "the test is not whether the insurer's interpretation of the policy is correct but whether the insurer's conduct was reasonable." *Id.* (citing *Lakehurst Cond. Owners Ass'n*, 486 F. Supp. 2d at 1213 (citation omitted)). However, "a reasonable basis for denying coverage constitutes a complete defense to any claim that the insurer denied coverage in bad faith or in violation of the CPA." *Id.* (citing *Koch v. Travelers Cas. & Sur. Co. of America*, 2006 WL 1587437, *2 (W.D. Wash. June 5, 2006) (citation omitted)). Transamerica argues that it has acted reasonably in first approving coverage under the HHCC Rider and paying out the maximum benefit of $35,000, then denying nursing home benefits after an investigation. *Id.* at 24–25. Furthermore, Transamerica points out that it has not denied Mr. Howisey further nursing home benefits if he moves into a nursing home as defined by the Policy. Transamerica argues that it "made an Alternate Plan of Care offer that would have provided Mr. Howisey additional benefits for his continued stay at Aegis under a different provision of the Policy," but that "Plaintiff did not accept this offer, despite that it would have continued his benefits at the exact same daily benefit level through the exhaustion of the lifetime maximum benefit applicable to Nursing Home Benefits." *Id.* at 25 (citing Dkts. #41. at 14–15; #41-15). Transamerica further argues that Mr. Howisey's negligent retention and supervision claims, based on Transamerica's hiring of CareScout in its investigation of the Aegis facility, should be dismissed because "Transamerica's decision was based on true and undisputed facts related to Aegis and Plaintiff's confinement there, including that Aegis is an assisted living facility not licensed as a Nursing Home." *Id.* at 26. Transamerica also argues that Mr. Howisey cannot establish the elements of this claim because CareScout acted within

the scope of its contract. *Id.* at 28 (citing *inter alia, Duncan v. Grant*, 2013 WL 5492940, at *7 (E.D. Wash. Oct. 1, 2013)). Transamerica argues that Mr. Howisey's intentional misrepresentation claim fails as a matter of law "because he cannot make a prima facie showing that any statements by Transamerica were false statements of material fact…" because the statements alleged in the Amended Complaint were either true, or statements of opinion. *Id.* at 29–30 (citing, *inter alia, Raby v. Onsrud Cutter, LP*, 2009 WL 5170187, at *7–8 (W.D. Wash. Dec. 17, 2009)).

In Response, Mr. Howisey argues that the Court should look at the intent of the parties in purchasing the Policy and at certain Washington State statutes and regulations that apply to this Policy. Dkt. #54 (citing RCW 48.84.040(1); RCW 48.84.040(5); WAC 284-54-150; WAC 284-54-050; WAC 284-54-300; and WAC 284-54-040). Mr. Howisey concedes that Aegis is not licensed by the State of Washington as a nursing home. *Id.* at 5. Mr. Howisey argues that issues of material fact preclude summary judgment on all of these claims, and requests further discovery under Rule 56(d). *Id.* at 23.

On Reply, Transamerica argues that "[n]o statute or regulation in this state precludes a policy from limiting Nursing Home Benefits to persons who are confined in a licensed Nursing Home." Dkt. #63 at 7. Transamerica goes through Mr. Howisey's bad faith and other non-contractual claims and argues that there are no genuine issues of material fact, and that Mr. Howisey has failed to identify specific facts that more discovery would reveal and why those facts would preclude summary judgment.

As an initial matter, the Court finds that the Policy's language is unambiguous in defining the requirements of receiving Nursing Home Benefits versus Assisted Living Facility Benefits. To receive Nursing Home Benefits, the insured must be staying at a Nursing Home

licensed as such by the state. Aegis is not so licensed. The Court need not dive into the intent of the parties to interpret this insurance contract because there are no material ambiguities. Transamerica has otherwise done nothing to breach the contract, and has taken efforts to eliminate any claim Mr. Howisey might have to damage for such a breach. Unless Mr. Howisey can point to some provision of this Policy contrary to state law, it is clear to the Court that Plaintiff's contract claims must fail. *See Celotex*, 477 U.S. at 323.

The Court disagrees with Mr. Howisey's analysis of the applicable statutes and regulations offered in Response to this Motion, and will go through each. This policy does not violate RCW 48.84.040(1) because it does not *limit* nursing home coverage via rider or endorsement, rather it limits nursing home coverage via the definition of a nursing home, and *expands* coverage to Assisted Living Facilities via rider. RCW 48.84.040(5) is not violated either. This section prohibits long term care insurance providers from "differentiat[ing] benefit amounts on the basis of the type or level of nursing home care provided." Here, Transamerica offered different benefits for nursing home and assisted living facility care based on the licensing of the facility. Mr. Howisey fails to explain how this violates the statute in his Response. *See* Dkt. #54 at 7–8. WAC 284-54-150 provides that the Policy must cover "skilled, intermediate, and custodial or personal care, whether benefits are for institutional or community based care." The Policy complies with this regulation because it covers all of these types of care within a covered facility; this regulation does not prevent insurers from requiring facilities to be appropriately licensed, or from offering nursing home benefits and separate assisted living benefits. WAC 284-54-050 states that no insurer can limit or exclude coverage by illness or treatment except when using one or more of fourteen specified exclusions. Mr. Howisey argues, without citation to any case law, that "excluding long term care coverage on the basis of

ORDER GRANTING DEFENDANT'S MOTION SUMMARY JUDGMENT - 10

a facility license is not a permitted exclusion." Dkt. #54 at 10–11. The Court disagrees with this analysis; the Policy is not excluding coverage by type of illness, accident, treatment, or medical condition, it is requiring that treatment be in a licensed nursing home facility for Nursing Home Benefits coverage. Mr. Howisey next cites WAC 284-54-300(6), which requires an insurance carrier to "fully describe" any "gatekeeper" provisions which limit benefits or preclude the insured from receiving benefits in a disclosure form. The Court finds that the disclosure form at issue complies with this requirement by stating that "Nursing Home confinement must be in a Nursing Home as defined… and assisted living facility confinement must be in an Assisted Living Facility, All providers referred to above are defined in the policy." Dkt. #48-3 at 4. WAC 284-54-040 deals with triggers to coverage; the Court finds that the requirement that Nursing Home Benefits be administered in a licensed Nursing Home is not a trigger to coverage. Given all of the above, Mr. Howisey has failed to point to legal basis to find that the Policy is invalid, and his claims for declaratory judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing will be dismissed.

The Court has also reviewed Mr. Howisey's separate, essentially duplicative Motion for Partial Summary Judgment. Dkt. #47. None of Mr. Howisey's arguments in this expanded briefing cause the Court to deviate from the above analysis. The Court will deny this Motion on the same grounds as above.

Turning to Mr. Howisey's common law and statutory bad faith claims, the Court finds there is no question of material fact and that no reasonable juror could find that Transamerica's actions were unreasonable given its straightforward basis for denying the claim. *See Schreib v. Am. Family Mut. Ins. Co.*, 129 F. Supp. 3d 1129, 1135 (W.D. Wash. 2015); *Coventry Assoc. v. Am. States Ins. Co.*, 961 P.2d 933, 937 (Wash. 1998). Summary judgment is therefore

ORDER GRANTING DEFENDANT'S MOTION SUMMARY JUDGMENT - 11

warranted on Plaintiff's fourth through sixth causes of action. *See, e.g., Lakehurst Condo. Owners Ass'n v. State Farm Fire & Cas. Co.*, 486 F. Supp. 2d 1205, 1217 (W.D. Wash. 2007). This ruling is based on the written record of Transamerica's actions, above, rather than hearsay or attorney declarations. Once Transamerica conclusively determined that Aegis was not licensed as a nursing home, a fact that Mr. Howisey does not dispute, it became reasonable for Transamerica to deny a claim for nursing home benefits for care at that facility under the Policy. Transamerica's subsequent actions to offer to extend existing benefits and offer to provide Nursing Home Benefits if Mr. Howisey transferred to a licensed nursing home further negate any claim of bad faith.

Mr. Howisey has failed to present necessary facts to support his remaining claims of negligent retention and supervision and intentional misrepresentation. The Response to Transamerica's Motion for Summary Judgment fails to go through and support the necessary elements of these claims. The record shows CareScout did not give Transamerica any incorrect or incomplete information that affected Transamerica's decision, and the existing record is sufficient to support Transamerica's decision regardless of any forthcoming discovery. All alleged misrepresentations of Transamerica are either true or statements of opinion, and Transamerica was not required to disclose case law to Mr. Howisey.

Given the above, the Court notes that Mr. Howisey cannot continue to plead class action claims. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) ("When a named plaintiff has no cognizable claim for relief," he cannot represent a class).

Finally, the Court agrees with Transamerica that Mr. Howisey has failed to identify specific facts that further discovery would reveal and why those facts would preclude summary judgment, and will thus deny his Rule 56(d) request.

ORDER GRANTING DEFENDANT'S MOTION SUMMARY JUDGMENT - 12

### C. Remaining Motions

Because the Court has dismissed all of Mr. Howisey's claims on summary judgment, remaining discovery motions in this matter are moot. The Court further finds that discovery sanctions are not warranted against either party given Transamerica's objections on proportionality and the unique procedural history of this case. *See* Dkts. #34 and #49.

### IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

(1) Defendant Transamerica's Motion for Summary Judgment (Dkt. #40) is GRANTED. All of Plaintiff Howisey's claims in this matter are DISMISSED.

(2) Plaintiff Howisey's Motion for Partial Summary Judgment (Dkt. #47) is DENIED.

(3) All other pending Motions are STRICKEN as MOOT.

(4) This case is CLOSED.

DATED this 30th day of November 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE